**Rick Eugene KIBBEE, Appellant,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Appellee.**

No. 93–1606.

Supreme Court of Iowa.

Dec. 21, 1994.

Martin A. Diaz of Tom Riley Law Firm, P.C., Iowa City, for appellant.

J. Michael Weston of Moyer & Bergman, Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

In this case we decide whether a liability policy affords coverage for damages recovered under a theory of intentional infliction of emotional distress. We conclude, as did the district court, that it does not. Therefore, we affirm.

### I. Background Facts and Proceedings.

In a prior lawsuit plaintiff, Rick Kibbee, recovered substantial damages from Ellen and Albert Cram. The jury awarded these damages under theories of fraudulent misrepresentation and intentional infliction of emotional distress.

At the time of the tortious acts giving rise to the Crams' liability, they were insured under consecutive insurance policies issued to them by the defendant, State Farm Fire and Casualty Company. State Farm denied that it had coverage under the policies for Kibbee's judgment against the Crams and refused to pay the judgment.

The Crams and Kibbee then agreed to a settlement. In return for a full release and a satisfaction of the judgment, the Crams paid Kibbee $100,000 and assigned their rights against State Farm to Kibbee. Kibbee filed this action against State Farm claiming that State Farm was contractually obligated to pay the judgment under its insurance contract with the Crams.

The case was submitted to the court on a stipulation of facts. The district court held that there was no coverage. Kibbee appealed.

### II. The Relevant Policy Language.

State Farm insured the Crams under two personal liability umbrella policies which were identical in their terms. The insuring agreement of the policies provided that State Farm would pay "damages for a loss" that the Crams became legally obligated to pay. The policy defined "loss" as "an accident that results in personal injury...."

"Personal injury" was defined in the policy as

a. bodily harm, sickness, disease, shock, mental anguish or mental injury. This includes required care, loss of services and death resulting therefrom ...;

b. false arrest, false imprisonment, wrongful eviction, wrongful detention, *malicious prosecution and humiliation;*

c. libel, slander, defamation of character or invasion of rights of privacy; and

d. assault and battery.

(Emphasis added.) The policy also contained an intentional act exclusion for "personal injury":

a. which is either expected or intended by the insured; or

b. to any person ... which is the result of [the insured's] willful and malicious act, no matter at whom the act was directed.

Kibbee does not contend that the policies cover the damages awarded for fraudulent misrepresentation. However, he does claim coverage for that part of the judgment based on intentional infliction of emotional distress. He first asserts that the tort of intentional infliction of emotional distress is included in the personal injury definition under the label "malicious ... humiliation." His second contention is that the intentional act exclusion is inconsistent with the policy's express coverage of the intentional tort of intentional infliction of emotional distress. Therefore, he argues, the policy is ambiguous and the exclusion is unenforceable. State Farm disputes both contentions.

To determine whether coverage exists for Kibbee's judgment, we must first decide whether Kibbee's judgment is based on a personal injury as that term is defined in the policy. If it is not, he concedes there is no coverage under the policy. If it is, we must then examine whether the intentional act exclusion negates coverage.

III.  *Did Kibbee Sustain a Personal Injury?*

■ The policy defines the term "personal injury" in two ways. It lists specific types of damages that are personal injury such as "bodily harm" and "mental anguish."[1] It also lists specific torts—such as "false arrest," "slander" and "assault and battery"— that qualify as personal injury.

Kibbee asserts that the language "malicious prosecution and humiliation" can be reasonably interpreted to mean "malicious humiliation." He also argues that the term "malicious humiliation" encompasses the tort of intentional infliction of emotional distress. State Farm contends that "malicious prosecution" and "humiliation" are included in the definition of personal injury, but not "malicious humiliation." Kibbee responds that at a minimum the policy is ambiguous on this point and therefore should be interpreted favorably to the insured.

■ In considering the proper meaning of the personal injury definition, we apply well-known principles of law. The intent of the parties controls. *Hofco, Inc. v. National Union Fire Ins. Co.*, 482 N.W.2d 397, 401 (Iowa 1992). We determine the parties' intent from the language of the policy, unless the policy is ambiguous. *Id.* Ambiguity exists when, after application of principles of contract interpretation, a genuine uncertainty remains as to which one of two or more meanings is the proper one. *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991). A mere disagreement between the parties as to the meaning of policy language does not establish an ambiguity. *Motor Club of Iowa Ins. Co. v. Iowa Mut. Ins. Co.*, 508 N.W.2d 634, 636 (Iowa 1993). Only when the policy language is susceptible to two *reasonable* interpretations do we find an ambiguity. *Youngwirth v. State Farm Mut. Auto. Ins. Co.*, 258 Iowa 974, 979, 140 N.W.2d 881, 884 (1966).

Thus, our first task is to decide whether Kibbee's proposed meaning of the language "malicious prosecution and humiliation" is reasonable under our principles of insurance contract interpretation. We give words their ordinary meaning "to achieve a practical and fair interpretation." *Central Bearings Co. v. Wolverine Ins. Co.*, 179 N.W.2d 443, 445 (Iowa 1970). We do not indulge in a strained or unnatural interpretation of policy lan-

1. Kibbee could argue that the damages awarded in the underlying lawsuit are personal injury under the "mental anguish or mental injury" language of the definition. However, he concedes that even if his damages fall within that portion of the definition, he would not be entitled to recover. Any coverage premised on this part of the personal injury definition would be excluded by the intentional act exclusion because the mental injury to Kibbee was intended by the

Crams. *See Altena v. United Fire & Casualty Co.*, 422 N.W.2d 485 (Iowa 1988); *McAndrews v. Farm Bureau Mut. Ins. Co.*, 349 N.W.2d 117 (Iowa 1984). Kibbee acknowledges that mental injury may be caused negligently as well as intentionally. Apparently for this reason, he does not argue that the intentional act exclusion is ambiguous or unenforceable with respect to the damages listed in the personal injury definition.

guage merely to find ambiguity. *Hein v. American Family Mut. Ins. Co.*, 166 N.W.2d 363, 366 (Iowa 1969). We conclude upon our review of the policy that the meaning advanced by Kibbee is strained and unnatural.

In interpreting statutes, we figure out the meaning of words in part by reference to associated language. *Wright v. State Bd. of Eng'g Examiners*, 250 N.W.2d 412, 413 (Iowa 1977); *State v. Bauer*, 236 Iowa 1020, 1022, 20 N.W.2d 431, 432 (1945); 2A Norman J. Singer, *Sutherland Statutory Construction* §§ 47.16, 47.26 (5th ed. 1992). We apply similar principles in interpreting this insurance contract. 13 John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 7383, at 45 (rev. ed. 1976) (meaning of words may be explained by reference to associated words and phrases); 4 Samuel Williston, *A Treatise on the Law of Contracts* § 600, at 285 (Walter H.E. Jaeger ed., 3d ed. 1961); *see Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 825 (Iowa 1987) (applying principles of statutory construction in interpretation of insurance policy). Applying these principles we find that interpreting the word "malicious" as modifying "humiliation" is inconsistent with the structure of the paragraph in which this language is found.

Paragraph (b) reads *"false* arrest, *false* imprisonment, *wrongful* eviction, *wrongful* detention, *malicious* prosecution and humiliation." (Emphasis added.) If the parties had intended to include "malicious humiliation" as a defined personal injury, they would have said "malicious prosecution and malicious humiliation." In identifying the other torts listed in this paragraph, each noun was modified separately. For example, the policy says "false arrest" and "false imprisonment," not "false arrest and imprisonment." Furthermore paragraph (a) reads "mental anguish or mental injury," not "mental anguish or injury."

Kibbee argues that State Farm should have put a comma after the word "prosecution" if it had not intended the word "malicious" to modify the word "humiliation." *See* The New Lexicon Webster's Dictionary of the English Language EH–42 (1988) ("A comma should separate pairs of words in a series. A comma should not be placed before a conjunction joining words of a series that are considered as one unit."). Although it may be true that the grammatically correct way to punctuate the sentence would have been as Kibbee suggests, the insurer consistently violated this grammatical rule in its definition of personal injury. Even where State Farm did not use a comma before the conjunctions separating words in a series, it is clear that the phrases or words separated by the conjunctions were not intended to be one unit. Moreover, we have recognized that punctuation is the most fallible basis for interpretation of a contract. *Randolph v. Fireman's Fund Ins. Co.*, 255 Iowa 943, 948, 124 N.W.2d 528, 530–31 (1963). Punctuation will not control the meaning of words over the meaning suggested by the arrangement of the words and the text in which they appear. *Id.*

Kibbee also points out that coverage for mere humiliation is superfluous because humiliation is encompassed in paragraph (a) under "shock, mental anguish or mental injury." While that may be so, the language quoted from paragraph (a) is itself redundant. For example, mental anguish is a mental injury. Consequently, the inclusion of humiliation, a type of mental anguish, is not inconsistent with the repetitive structure of the personal injury definition. Although we strive to give each word a meaning that does not render it superfluous, *see Stahl v. Preston Mutual Insurance Ass'n*, 517 N.W.2d 201, 203 (Iowa 1994), we will not do so when that meaning is inconsistent with the structure and format of the text in which the word is located and when that meaning is otherwise unreasonable.

One reason that Kibbee's suggested meaning of the language here is unreasonable is because malicious humiliation is not a recognized tort. We will not interpret the policy language to cover a tort that is nonexistent. Nor can we reasonably interpret the phrase "malicious humiliation" to refer to the tort of intentional infliction of emotional distress. If the parties had intended to cover the tort of intentional infliction of emotional distress, they would have used that well-recognized phrase just as they used the common names of the other torts included in the definition.

To equate the unknown tort of malicious humiliation with the established tort of intentional infliction of emotional distress is a strained interpretation of the policy.

We conclude that the interpretation upon which Kibbee relies is unreasonable. Therefore, we hold that the tort of intentional infliction of emotional distress is not included in the definition of personal injury. Having decided that, it is not necessary to consider whether the intentional act exclusion conflicts with the policy's coverage of other intentional torts.

The district court correctly ruled that State Farm's policy did not cover the judgment obtained by Kibbee.

**AFFIRMED.**