Gayle R. DOLAN, Plaintiff,

v.

**GUARANTEE TRUST LIFE INSURANCE COMPANY, Defendant.**

No. 3:05–CV–00147–CFB.

United States District Court,
S.D. Iowa,
Davenport Division.

March 15, 2007.

Steven J. Havercamp, Stanley, Lande & Hunter, Davenport, IA, for Plaintiff.

Tonya Marie McCarty, McKnight, Kitzinger, McCarty & Pravdic, Chicago, IL, Robert T. Park, Snyder Schwarz Park & Nelson PC, Rock Island, IL, for Defendant.

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

BREMER, United States Magistrate Judge.

The Court has before it Defendant Guarantee Trust Life Insurance Company's (GTL) Motion for Summary Judgment (Clerk's No. 16), filed October 22, 2006, challenging Plaintiff Gayle R. Dolan's claims.

Dolan filed her Complaint in the Iowa District Court for Clinton County on September 2, 2005, and GTL removed the case to this Court. Dolan asserts causes of action against GTL for breach of contract and bad faith denial of life insurance benefits. In its Motion for Summary Judgment, GTL challenges both claims on the basis that no genuine issue of material fact is in dispute and it is entitled to judgment as a matter of law.

Plaintiff filed a Resistance to the summary judgment motion; GTL filed a Reply; and Plaintiff filed a Surreply.

The case was referred on October 19, 2005, to a United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c), and the parties' consent. This matter is fully submitted.

After carefully considering the evidence in the record and the parties' memoranda, the Court finds and holds as follows on the issues presented.

## STANDARD FOR SUMMARY JUDGMENT

In determining whether to grant a defendant's motion for summary judgment, a court must first examine the record to see whether the defendant, "in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated 'the absence of a genuine issue of material fact'" and "entitlement to judgment as a matter of law." *Beard v. Banks*, —— U.S. ——, ——, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (citing Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the defendant has done so, the Court must next determine whether the plaintiffs have, "'by affidavits or as otherwise provided' in Rule 56 *(e.g.* through depositions, etc.) 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Rule 56(e) (emphasis deleted)). If not, the court must enter judgment in the defendant's favor. *See id.*

To preclude entry of summary judgment, the nonmovant must make a showing sufficient to establish the existence of every element essential to his case, and on which he has the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Laughlin v. Schriro*, 430 F.3d 927, 928 (8th Cir.2005).

On a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Groh v. Ramirez*, 540 U.S. 551, 562, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (alteration revised); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Crossett Paper Mills Employees Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 476 F.3d 578, 580 (8th Cir.2007).

## FACTS

The following facts are either undisputed or viewed in the light most favorable to Dolan, the nonmoving party.

On May 6, 1993, Jolene Starr, an insurance agent, applied for a life insurance policy from New York Life Insurance naming Kevin Dolan as owner and beneficiary, and his mother, Dorothy Goettsch, as the insured. Goettsch and her son wanted the policy, because the benefits would allow Kevin to buy out his five sisters' shares of the family farm when Goettsch died.

Mr. Dolan told Starr he wanted a life insurance policy insuring his life and naming his wife, Gayle, as beneficiary. If Mr. Dolan died, his wife could then use the benefits from the second policy to continue paying premiums for the New York Life policy.

Because of Mr. Dolan's health history, Starr could find only one acceptable life insurance policy for him. On July 30, 1993, Starr met with the Dolans and obtained information from Mr. Dolan to fill out the application for a life insurance policy with GTL. Mr. Dolan signed the application as the proposed insured. The application listed Gayle Dolan as the sole beneficiary. The application did not mention an automatic premium loan option, and Starr did not discuss such an option with the Dolans. Mr. Dolan listed his name and address on the application as Kevin J. Dolan, 1970 280th Avenue, De Witt, Iowa 52742. (Pl.'s App. at 16.)

On August 20, 1993, Grinnell issued Policy Number GTL1098018, a whole life in-

surance policy, to Mr. Dolan as both the insured and the policy owner. The policy defined "owner" as, "the person who may exercise all policy privileges and rights while the insured is living." (Pl.'s App. at 39.) The policy provided that the owner may exercise all policy rights, "by making written request to us." (Pl.'s App. at 10.)

The policy had a full face value of $75,000 and a quarterly premium payment of $315.58. The policy stated the premiums were payable for the rest of Mr. Dolan's life.

On September 16, 1993, GTL sent Starr a copy of Mr. Dolan's life insurance policy to review and deliver to him. When Starr delivered the policy to Mr. Dolan, she explained about the premium structure and coverage, and that if, after reviewing the policy, Mr. Dolan had any problems or concerns about it, he must contact the insurance company within 20 days for a full premium refund. Starr testified she explained about the grace period and the importance of paying the premiums on time.

Under the heading "Grace Period," the policy stated as follows:

> If you do not pay a premium on a premium due date, we will keep this policy and riders in force for a Grace Period of 31 days. We will mail you and any assignee shown on our records a notice of the amount of premium that must be paid to keep this policy in force beyond the end of the Grace Period.

Def.'s App. at 11.

In the subsection entitled, "Lapse and Reinstatement," the policy provided, "If a premium is not paid before the end of the 31 day Grace Period, this policy will lapse and no further premium payments may be made." *Id.* "Lapse" meant, "this policy is not in force, except as may be provided in the Policy Values section, because a premium was not paid when due." *Id.* In a subsection called, "Premium Due and Un-

paid," the policy stated, "This policy will lapse, as of the premium due date, if the premium is not paid before the end of the Grace Period." *Id.* Unlike the subsection discussing the grace period, the provision describing lapse and reinstatement contained no notice provision.

If a policy lapsed, a policy owner could ask GTL to reinstate the policy to a premium paying basis. The policy defined "reinstatement" as meaning, "this policy is put back in force after it has lapsed." *Id.* at 9. To reinstate a policy, GTL required the owner's written request; proof acceptable to GTL of the insured's continued insurability; payment of all past due premiums, with interest, during the insured's lifetime; and payment of interest compounded annually on all past due premiums and any indebtedness according to the rates shown on the policy's schedule page. *Id.* at 11. The schedule for Mr. Dolan's policy showed the reinstatement rate was six percent per year. *Id.* at 7.

The policy allowed the owner to borrow up to the policy's available loan value. Policy loans included an option for automatic premium loans (APL), described as follows:

> Automatic Premium Loans
>
> You can arrange for an automatic premium loan if you asked for this option in your application, or if you write us and ask for this option after this policy has been issued. You can also write to us at any time and tell us you do not want this option. . . .
>
> If you have elected this option and you have not paid the premium that is due before the end of the Grace Period, we will make a policy loan to pay the balance of the premium.

Def.'s App. at 12.

The APL provision required "enough loan value to pay at least a quarterly pre-

mium," or, "this policy will lapse." *Id.* The loan value was the surrender value determined as of the date to which the premium was paid.

The policy's schedule page listed the interest rate on an automatic premium loan as 7.40%, payable in advance on each policy anniversary. (Def.'s App. at 32.) If unpaid, the interest would be added to the loan.

Starr did not mention the automatic premium loan option when she delivered the policy to Mr. Dolan.

From the issuance of the policy until August 20, 2000, the parties agree that the Dolans paid the policy premiums either by the initial premium-due date, or before the 31–day grace period had expired. (Def.'s App. at 30.)

Thomas Purtell, GTL's Assistant Vice President of Policy Accounting, testified in his affidavit that the company automatically generates premium notices through a computer-based billing program. He stated that on July 31, 2000, GTL's computer-based billing program automatically generated a premium notice with a due date of August 20, 2000, for Mr. Dolan's life insurance policy. (GTL Affidavit at ¶¶ 5–6, ll.) The record contains a "Life Premium Notice" for policy number GTL1098018 showing the quarterly amount of $315.58 was due August 20, 2000, and a mailing address of Kevin J. Dolan, 1970 280th Ave., De Witt, IA 52742. (Def.'s Supp.App. at 6.)

Purtell testified that on August 30, 2000, because GTL had not received Mr. Dolan's premium payment due August 20, the company's computer system generated a premium reminder notice. According to Purtell, the insurer mailed all notices to Mr. Dolan at 1970 280th Ave., De Witt, Iowa 52742, the address listed on his application. Mrs. Dolan counters that, "We never received the payment reminder ... that GTL claims it sent for the August 20, 2000

premium payment." (G. Dolan Aff. at ¶ 17.)

Mary Roberts, GTL's vice president of claims and customer service, testified that the company's records indicate that Mr. Dolan's insurance policy lapsed as of September 20, 2000, for non-payment of the premium. (Roberts Aff. at ¶ 9.)

Purtell testified that on September 25, 2000, GTL's computer-based billing program generated a premium lapse notice indicating the policy had lapsed for non-payment of the August 20, 2000, premium. Mrs. Dolan claims that, "We never received the ... lapse notice." (G. Dolan Aff. at ¶ 17.)

On September 30, 2000, Mr. Dolan died. Starr stated that the following day, a relative of his called her to report his death. Starr, in turned, called GTL and notified the company of his death. A GTL representative told Starr that the policy had lapsed very recently, and the company would pay a reduced benefit. Starr then called Mrs. Dolan and asked if the premium had been paid.

Mrs. Dolan stated she sent a check for $315.58 to pay the August 20 premium payment in September — she does not state what date in September she sent the check. (G. Dolan Aff. at ¶ 18.) Roberts testified that GTL's records indicate that on October 12, 2000, the company received, "draft # 9477 in the amount of $315.58 as premium payment for Policy Number GTL1098018," and returned check number 9477 to Mrs. Dolan the same day, "as Policy Number GTL1098018 had lapsed as of September 20, 2000 for non payment of the premium." (Roberts Aff. at ¶ 8–9.) The record contains a copy of check number 9477 signed by Mrs. Dolan, made payable to GTL in the amount of $315.58 and dated "Aug. 00." (Def.'s Supp.App. at 6.)

Starr testified that the Dolans never expressed any concerns to her that they were not receiving notices or payment reminders from GTL.

On October 18, 2000, a referral claim sheet entry written by a GTL adjuster, Bessie, said, "We have just received a claim on Mr. Dolan — His wife the beneficiary has wr[itten] a letter explain[ing] why she wants us to pay the full amount." (Pl.'s App. at 45 (alterations added).) In her entry, Bessie asked Adrienne, another employee in her department, to look at the information received and give Bessie her opinion about Mrs. Dolan's request. On Oct. 19, Adrienne wrote a note on the referral claim sheet to her supervisor Mary Roberts, asking her opinion, and stating as follows:

> Mary — policy issued in 1993 for $75,000.00. They've usually paid their premium in the grace period, but with the policy only paid to 8/20/00, they sent the premium in after the grace period. The prem. was returned on 10–12–00 asking for a reinstatement application. He died 9/30/00. The policy went to RPU for $16,000. An agent (friend of the family) called yesterday asking about the automatic premium loan provision. The policy states they can ask for this option in the application or write & ask after the policy is issued. He wants to know where in the application she could choose the APL, but it's not on there. Dean says the company no longer offers the APL, but the policy is misleading. Should we give them the benefit of the doubt & deduct prem. from the face?

Pl.'s App. at 45.

## DISCUSSION

### I. Breach of Contract

Mrs. Dolan claims GTL breached its contractual duty under the life insurance policy when it failed to pay the policy's full face value to Mrs. Dolan after receiving notice of her husband's death. In her complaint, she also asserts the policy had an automatic payment clause and referred to an election in the policy application, but the application contained no reference to the automatic payment option and neither GTL nor Starr ever explained or indicated this automatic payment clause to the Dolans.

In its Motion for Summary Judgment, GTL responds that it had no duty to pay the policy's full face value, because the policy had lapsed for non-payment of premiums, in that the company received no premium before the 31–day grace period expired on September 20, 2000.

Mrs. Dolan counters that the policy had not lapsed because (1) she sent the August 20, 2000, payment to GTL; (2) the company had always accepted late premium payments in the past; (3) GTL failed to send the required grace period and lapse notices; (4) and the policy was ambiguous. (Pl.'s Surreply Supp. Res. at 2–3.)

### A. Payment of the August 20, 2000, Premium

■ To show that no genuine issue of material fact is in dispute and it is entitled to judgment as a matter of law, GTL asserts in its Statement of Material Facts that the company received no premium payment for Mr. Dolan's policy as of the end of the day on September 20, 2000, which was the end of the grace period. (Def.'s Statement Material Facts at 2.) In support of its assertion, GTL points to Purtell's affidavit statements. (Def.App. at 30.)

In her Response to Defendant's Statement of Material Facts, Mrs. Dolan states, "Qualifies. Gail Dolan sent check number 9477 in the amount of $315.58 for the August 20, 2000 premium payment. GTL returned the check on October 12, 2000."

(Pl.'s Res. Def.'s Statement Material Facts at 2.) In her affidavit, Mrs. Dolan stated, "I mailed the check for the August 20, 2000, premium payment in September of 2000." (G. Dolan Aff. at ¶ 18.) She does not identify the date she mailed the check.

Mrs. Dolan has not provided sufficient evidence to raise a genuine issue of material fact concerning whether she paid the August 20, 2000, premium payment before the policy lapsed at the end of the day on September 20, 2000, the final day of the grace period.

### B. GTL Always Accepted Late Premium Payments

Mrs. Dolan contends GTL had always — before the August 20, 2000, premium payment was due — accepted late premium payments on the policy.

GTL does not dispute that it had previously accepted Mr. Dolan's premium payments made after the premium-due date, but the company states that from the time the policy was issued in 1993 until September 2000, the company received all premium payments for the policy either by the initial premium-due date or within the 31-day grace period, and it never received or accepted any premium payment after the expiration of the grace period. Mrs. Dolan admits that all premium payments on the policy, up until September 2000, were received by the company either by the initial premium-due date or "within 31 days thereof." (Pl.'s Res. Def.'s Statement Material Facts at ¶ 17.) She contends, however, that the 31-day grace period was unenforceable, because the policy was ambiguous, as discussed below.

Whether GTL had previously accepted late premium payments past the initial premium-due date, but before expiration of the grace period, is not a material fact in this case. Mrs. Dolan has not provided sufficient evidence to raise a genuine issue concerning the material fact — whether GTL had ever before September 2000 accepted a premium payment on Mr. Dolan's policy after expiration of the grace period.

### C. Notice

■ When policy language, such as in this case, defines the policy period for a definite and specific term of duration, the policy automatically expires at the end of that term, and an insurer has no inherent duty to notify an insured of the policy's expiration date or that the insurer has failed to renew the policy and it will or has expired, or lapsed. *First Nat'l Bank of Sioux City v. Watts,* 462 N.W.2d 922, 925–927 (Iowa 1990); *see Thompson v. Knickerbocker Life Ins. Co.,* 104 U.S. 252, 258, 14 Otto 252, 26 L.Ed. 765 (1881) (stating an insured is bound to know when his premiums become due and has a duty to pay when due, whether the insurer gives notice or not; holding insurance company's practice of giving notice of time of payment of premiums created no duty to give such notice and was no excuse for nonpayment based on the insured's reliance on notice).

■ Nevertheless, a policy or statutory provision may create such a duty for the insurer. *Id.* at 927. Here, Plaintiff points to no statutory provision creating a duty. Similarly, no policy provision created a duty for GTL to send a notice before the initial premium-due date or after the policy had lapsed for non-payment of premiums. As Plaintiff notes, however, a policy provision stated that GTL would mail the policy owner, Mr. Dolan, a "notice of the amount of premium that must be paid to keep this policy in force beyond the end of the Grace Period," (Def.'s App. at 11). The Court finds this provision imposed a duty on GTL to mail Mr. Dolan a notice concerning the premium payment he had to pay to keep his policy in force beyond

September 20, 2000, the expiration of the grace period at issue.

To establish that no genuine issue of material fact is in dispute, GTL pointed to evidence, including Purtell's affidavit, indicating the company's computer-based billing program automatically generated premium notices, including a notice on August 30, 2000, that his premium payment was overdue and the amount he needed to pay, and the insurer mailed all notices to Mr. Dolan at the address listed on the application: Kevin J. Dolan, 1970 280th Ave., De Witt, IA 52742. (GTL Aff. at ¶¶ 7, 9, 11.) This evidence is sufficient for GTL to meet its initial burden to show "there is an absence of evidence of support" for Plaintiff's breach-of-contract claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *cf. Crotty v. Dakotacare Admin. Serv., Inc.*, 455 F.3d 828, 831 (8th Cir.2006) (holding that to show group health insurance plan administrator complied with its obligation to provide terminated employee notice of eligibility for continuation of health insurance coverage, administrator had to provide evidence that indicated its mailing system was reliable and that the system was followed in the relevant insistence).

Mrs. Dolan attempted to raise a genuine issue of material fact concerning whether GTL mailed the required notice by stating GTL had no copies of the notices it purportedly sent pertaining to the policy and, "We never received the payment reminder or the lapse notice" that GTL claims it sent for the August 20, 2000, premium payment. (G. Dolan Aff. at ¶ 17.)

The undisputed evidence indicates that when the insurer sent notices to Kevin Dolan before his death, it addressed them to Kevin J. Dolan at 1970 280th Avenue, De Witt, Iowa 52742, the address he supplied on his application. Mrs. Dolan, however, provided no evidence indicating whether she routinely, and specifically in this instance, picked up family mail,

opened and read mail addressed to her husband, or otherwise saw the contents of such mail. Mrs. Dolan has provided no evidence to indicate her knowledge, or notice, regarding the receipt and contents of mail addressed to Mr. Dolan was anything other than indirect, that is, dependent on his conveying the information to her. *See Nunley v. Department of Justice*, 425 F.3d 1132, 1136 (8th Cir.2005) (stating that indirect notice depends on an intermediary to convey the information to the interested person; citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Circumstances indicate whether or not it is reasonably probable that the intermediary has communicated the information to the interested person. *See generally Wuchter v. Pizzutti*, 276 U.S. 13, 19–20, 48 S.Ct. 259, 72 L.Ed. 446 (1928) (comparing requirements making it more or less reasonably probable that notice of service on the secretary of state would be communicated to a nonresident defendant; cited in *Mullane*, 339 U.S. at 315, 70 S.Ct. 652). Mrs. Dolan has pointed to no evidence concerning such circumstances.

Viewing the evidence in the light most favorable to Mrs. Dolan, the Court holds that without more, Mrs. Dolan's statement that "we" did not receive the notice mailed to Mr. Dolan, is legally insufficient to generate a genuine issue of material fact on the issue of whether GTL mailed the notice.

**B. Ambiguous Policy Terms**

Mrs. Dolan next maintains the terms of the insurance policy and application were ambiguous. (Pl.'s Br. Res. at 3, 10–15; Pl.'s Surreply Supp. Res. at 2–3.) Because the terms were ambiguous, she argues, they should be construed against the insurer.

In Iowa, ambiguity exists when, after a court applies principles of contract interpretation, "a genuine uncertainty remains as to which one of two or more meanings is the proper one." *Kibbee v. State Farm Fire and Cas. Co.*, 525 N.W.2d 866, 868, (Iowa 1994). "A mere disagreement between the parties as to the meaning of policy language does not establish an ambiguity." *Id.* A court finds ambiguity only when the policy's language "is susceptible to two reasonable interpretations." *Id.* Iowa courts give words their ordinary meaning "to achieve a practical and fair interpretation," and do not "indulge in a strained or unnatural interpretation of policy language merely to find ambiguity." *Id.* (internal quotation and citation omitted); *accord Continental Ins. Co. v. Bones*, 596 N.W.2d 552, 556 (Iowa 1999). An ambiguity exists only if "genuine uncertainty" exists regarding the policy's language. *DeVetter v. Principal Mut. Life Insurance Co.*, 516 N.W.2d 792, 797 (Iowa 1994) (citing *Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 824 (Iowa 1987)).

To show ambiguity, Mrs. Dolan first points to policy terms that provide that coverage would lapse if premium payments were late. She asserts these terms were ambiguous in light of GTL's conduct in accepting every late payment before September 2000, which led the Dolans to reasonably believe that paying late would not end their coverage. As the Court noted above, the undisputed facts show that GTL never accepted a late premium payment after expiration of the grace period. By the policy's terms in the Lapse and Reinstatement section, the policy would lapse if a premium was not paid before the end of the grace period. Nowhere does the policy state the policy would lapse if the premium was late in terms of being paid past the initial due date, but was paid before expiration of the grace period. The Court finds the policy terms in the Lapse and Reinstatement section were not ambiguous, and a reasonable insured would understand that the coverage provided would lapse if the premium was not paid within the grace period.

Mrs. Dolan next points to the following language in the Lapse and Reinstatement section to establish ambiguity:

If a premium is not paid before the end of the 31 day grace period, this policy will lapse and no further premium payments may be made. However, even if this policy lapses, it may be continued in force under the Non–Payment of Premium Options section and,[sic] the values provided in the Policy Values section may be available to you.

You may also ask us to reinstate this policy to a premium paying basis.

Def.'s App. at 11. She argues the options referred to in the section include the APL described in the Policy Loans section; the APL was the only option that would have continued the coverage; and because Mr. Dolan's "policy had the APL, the missed premium payment should have triggered the automatic loan, covering the balance of the premium payment and preventing the alleged lapse." (Pl.'s Br. Res. at 12–13.) Mrs. Dolan further contends the APL enrollment terms were misleading, in that the application did not include a box to check or lines on which an applicant could ask for the option.

The Non–Payment of Premium Options section cited by Mrs. Dolan stated:

Premium Due and Unpaid

This policy will lapse, as of the premium due date, if the premium is not paid before the end of the Grace Period. If this policy has no Surrender Value it will terminate without value. If this policy has a Surrender Value on the date of lapse, you may choose one of the following options:

1. extended term insurance, if available;

2. reduced paid-up insurance; or

3. a single sum payment of the Surrender Value which terminates this policy.

The Surrender Value of this policy is the Cash Value on the date of surrender minus any indebtedness.

If you do not make a choice within 60 days after the date of lapse and if the Schedule shows that the Extended Term Insurance option is available; we will automatically continue this policy as extended term insurance. If the Extended Term Insurance option is not available, we will continue this policy as reduced paid-up insurance. Any extended term or reduced paid-up insurance will be effective as of the due date of the last unpaid premium. No further premiums will be due unless this policy is reinstated.

Def.'s App. at 11. The schedule on Mr. Dolan's policy stated that extended-term insurance was not available. The policy described the second option, reduced paid-up insurance as follows:

This policy may be continued as Reduced Paid-up Insurance. We will use the Surrender Value of this policy and the Insured's age at that time to determine the amount of the paid-up insurance. Under this option, no further premiums will be due. The benefit is payable at the Insured's death. This option is not available when the amount of paid-up life insurance is less than $250 and the Extended Term Insurance option is available.

Id. In explaining the third option, the policy stated, "You may surrender this policy for its Surrender Value by sending us this policy with a written request.... The Surrender Value of this policy within 60 days after the due date of the first unpaid premium is the same as on the due date." Id. at 12.

Mrs. Dolan's argument that the language in the Non–Payment of Premium Options section included the APL described in the Policy Loans section is unreasonable. The APL appears in the section labeled Policy Loans, not in the Non–Payment of Premium Options section. The Non–Payment of Premium Options section did not include APL as an option in the event the policy lapsed, nor did the section even mention APL. Under the policy's plain language, the options described in the Non–Payment of Premium Options section were to be requested and applied after the policy had lapsed. The APL, in contrast, was an option the insured requested in writing before the policy lapsed to prevent lapsing.

Finally, the Lapse and Reinstatement section stated only that options in the Non–Payment of Premium Options section might continue the policy, not that the options would continue the particular coverage terms. The Court finds the policy terms Mrs. Dolan cites were not ambiguous, and a reasonable insured would understand that APL was not among the options offered after a policy lapsed for failure to pay a premium before the grace period expired.

The Court also finds unpersuasive Mrs. Dolan's argument that because Mr. Dolan's "policy had the APL, the missed premium payment should have triggered the automatic loan, covering the balance of the premium payment and preventing the alleged lapse." (Pl.'s Br. Res. at 12–13.) Although Mr. Dolan's policy described APL as an available option, Mr. Dolan never wrote to GTL, as directed in the APL provisions, to request the APL option. Without Mr. Dolan's request to put the APL option into effect, GTL could not implement the APL provision, which would

have caused Mr. Dolan to incur, without his permission, liability for interest.

Mrs. Dolan further contends the APL enrollment terms were ambiguous and misleading, in that the application did not include a box to check or lines on which an applicant could ask for the option, while the policy stated, "You can arrange for an automatic premium loan if you asked for this option in your application, or if you write us and ask for this option after this policy has been issued." (Def.'s App. at 12.) The issue is whether, because the application did not contain a designated box or line for requesting the APL option, the effect of the policy language referring to asking for the option in the application rendered the insurance contract ambiguous in terms of whether the option was in effect in September 2000. Court finds the terms in the policy and application were not ambiguous in terms of the requirement that an insured had to request the APL in writing, if not at the time of applying for the policy, then later, and a reasonable insured would understand that because no written request for the option had been made before September 2000, the APL option was not in effect. Mrs. Dolan's interpretation is not reasonable.

 Finally, the Court will consider Mrs. Dolan's arguments in light of the doctrine of reasonable expectations. The doctrine, recognized by the Iowa Supreme Court as a response to adhesion contracts such as insurance policies, requires a court to ignore a policy exclusion that is "bizarre or oppressive," that "eviscerates terms explicitly agreed to" by the parties, or "eliminates the dominant purpose of the transaction." *Pekin Ins. Co. v. Tysa, Inc.*, No. 3–05–cv–00030, 2006 WL 3827232, *6 (S.D.Iowa Dec. 27, 2006) (citing Iowa cases). If one or more of these conditions applies, the Court "will not frustrate the reasonable expectations of the insured even though a painstaking study of the policy provisions would have negated those expectations." *Id.* (internal quotations and citation omitted). As a preliminary matter, however, before considering those conditions, the Court must find either that an ordinary layperson would misunderstand the policy's coverage, or that circumstances attributable to the insurer would foster coverage expectations. *Id.*

As the Court's construction of the policy's provisions, including the APL provision, indicates, a reasonable person would understand that the APL option was not available to prevent the policy from lapsing, because Mr. Dolan had not followed the policy requirement to write and request the option.

Mrs. Dolan claims that Starr's failure to discuss the APL option with her and Mr. Dolan, together with the policy provisions, fostered her reasonable expectations that the APL option applied. No evidence indicates, and Mrs. Dolan does not assert, that Starr told the Dolans that the APL option would apply to their policy. Starr's silence would not have fostered reasonable coverage expectations, especially considering the APL provision's requirement that the insured request the option in writing. *Cf. id.*, 2006 WL 3827232, *6 (holding assertions about products liability coverage during the issuance of the policy did not create an expectation of coverage requiring the application of the reasonable expectations doctrine, when the policy included some, though limited, products liability coverage). Even if the Court were to find that either of the two preconditions existed and apply the test for reasonable expectations, it would find no justification for applying the doctrine in this case. The insurer's determination that the APL option did not apply in September 2000 is not bizarre nor oppressive, given that Mr. Dolan never requested the option as required under the policy. Determining the option

did not apply did not eviscerate a term explicitly agreed to by the parties, nor did it eliminate the policy's dominant purpose of providing life insurance coverage in return for premiums paid.

Viewing the record in the light most favorable to Mrs. Dolan, the Court finds that she has not provided legally sufficient evidence to establish her claim of breach of contract.

## II. Bad Faith

Mrs. Dolan claims that GTL acted in bad faith when it initially denied her claim without a reasonable basis. Alternatively, she claims that the insurer acted in bad faith by failing to re-investigate its denial, and continuing to deny her claim, even after receiving evidence supporting her claim.

 In first-party, bad-faith claims in Iowa, the plaintiff must show (1) the absence of a reasonable basis for denying the claim, and (2) the insurer knew or had reason to know that its denial was without a reasonable basis. *Galbraith v. Allied Mut. Ins. Co.*, 698 N.W.2d 325, 328 (Iowa 2005). The first element is an objective one. *Niver v. Travelers Indem. Co. of Illinois*, 412 F.Supp.2d 966, 977 (N.D.Iowa 2006) (applying Iowa law). Under this element, a "reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law." *Id.* (quoting *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005)). A claim is fairly debatable when it is open to dispute on any logical basis. *Id.* Because the focus is on the existence of a debatable issue, not on which party was correct, a party cannot prove bad faith based on the fact that the insurer's denial is ultimately found to lack merit. *Id.* The court generally decides as a matter of law whether a claim is fairly debatable. *Id.*

 Applying these principles to the present case, the Court finds that Mrs. Dolan has not provided sufficient evidence to establish the first element of her claim — that GTL initially had no reasonable basis for denying benefits under the policy. Based on the facts that GTL had not received the premium due before the grace period expired and that Mr. Dolan had not written to request the APL, the insurer acted reasonably in denying the claim.

Relying on *McIlravy v. North River Ins. Co.*, 653 N.W.2d 323 (Iowa 2002), Mrs. Dolan next alleges that GTL's failure to re-investigate its denial after receiving evidence supporting her claim raised an inference that the insurer had no reasonable basis for denying the claim. The additional evidence she identifies is the alleged misleading ambiguity created by the policy statement, "You can arrange for an automatic premium loan if you asked for this option in your application, or if you write us and ask for this option after this policy has been issued" (Def.'s App. at 12), and the fact that the policy application provided no box or line on which Mr. Dolan could request the option. Mrs. Dolan points to the statement, "the policy is misleading," in notes on a claim sheet entry written by a GTL adjuster and another employee to support her claim. (Pl.'s App. at 45.)

When, as here, a claimant alleges the insurer became aware after initially denying a claim that no reasonable basis existed to continue denying the claim, "the inquiry must focus on the defendant's initial denial as well as 'whether, at some later date, [the insurer] became aware there was no reasonable basis to continue denying plaintiffs' claim.'" *Id.* at 331 (quoting *Dirks v. Farm Bureau Mut. Ins. Co.*, 465 N.W.2d 857, 862 (Iowa 1991)).

The writers of the notes on the referral claim sheet investigated Mrs. Dolan's

claim further by seeking the opinions of other employees, including Mary Roberts. As the Court determined above, the policy's requirement that Mr. Dolan write the insurer if he wanted to request the APL option was not made ambiguous by the application's silence on the subject, or by other circumstances Mrs. Dolan asserts. The insurer continued to have a reasonable basis for denying the claim — the premium was not paid before the grace period expired, and Mr. Dolan had not submitted a written request for the APL option. Mrs. Dolan has not raised a jury question on whether GTL's continued denial of her claim was unreasonable.

Defendant has demonstrated that no genuine issue of material fact is in dispute and it is entitled to judgment as a matter of law on the bad-faith claim.

## CONCLUSION

For the foregoing reasons, the Court **grants** GTL's Motion for Summary Judgment (Clerk's No. 16) on Plaintiff's claims that GTL breached the insurance contract and acted in bad faith in denying the insurance claim.

The Court cancels the Final Pretrial Conference set for March 30, 2007, and the jury trial set in the three-week period beginning on April 9, 2007.

The Court **denies** as moot Defendant's Motion to Continue Pretrial Conference and Mass Trial Setting. (Clerk's No. 33.)

IT IS SO ORDERED.