# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2270

_____

Michigan Millers Mutual Insurance Company

*Plaintiff - Appellant*

v.

Asoyia, Inc., formerly known as Asoyia, LLC; United Fire & Casualty Company, as Subrogee of Sunnyside Country Club; Vivan Jennings

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: April 16, 2015
Filed: July 16, 2015

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

In 2006, Asoyia, LLC (now Asoyia, Inc.), an Iowa producer of soybean oil, purchased a general commercial agribusiness insurance policy and a commercial umbrella liability policy from Michigan Millers Mutual Insurance Company (Michigan Millers). The policies covered general liability on an occurrence basis. After a fire on June 18, 2007, destroyed the Sunnyside Country Club (Sunnyside)—

one of Asoyia's customers—Sunnyside's insurer and subrogee, United Fire & Casualty Company (United Fire), sued Asoyia and former chief executive officer Vivan Jennings in Iowa state court, alleging Asoyia's soybean oil caused the fire when a pile of laundered rags containing the oil spontaneously combusted.

In this diversity case, see 28 U.S.C. § 1332(a)(1), Michigan Millers seeks a declaration that it has no duty to defend or indemnify Asoyia or Jennings in the underlying suit because of Asoyia's prejudicial failure to provide prompt notice of the loss. See 28 U.S.C. §§ 2201, 2202; Fed. R. Civ. P. 57. On cross-motions for summary judgment, the district court[1] determined Jennings was insured under Asoyia's policies but that genuine disputes of material fact remained as to whether Michigan Millers could deny coverage for lack of notice. On December 20, 2013, a jury determined the late notice did not prejudice Michigan Millers, and the district court entered judgment against Michigan Millers. Michigan Millers timely filed a post-trial motion for judgment as a matter of law or a new trial, which the district court denied. Michigan Millers appeals,[2] and we affirm.

## I.    BACKGROUND

### A.    Stipulated Facts

The parties stipulated to the following facts for the jury trial:

> On June 18, 2007, a fire occurred at the Sunnyside Country Club in Waterloo, Iowa. United Fire provided property insurance to the country club. As the club's property insurer, United Fire conducted a

---

[1]The Honorable Celeste F. Bremer, United States Magistrate Judge for the Southern District of Iowa, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa, entered final judgment against Michigan Millers as to all defendants on May 15, 2014.

[2]We possess appellate jurisdiction pursuant to 28 U.S.C. § 1291.

preliminary investigation of the fire, determined that the fire loss was covered by its insurance agreement with the club, and paid the club's damage claim. The fire was also investigated by Dave Boesen, the Waterloo Fire Marshal.

Shortly after the fire, in the course of its investigation, United Fire sent a notice to others that a fire had occurred, which stated that United Fire might blame them for the loss. This is known as a subrogation notice; it was sent on June 28, 2007. United Fire's subrogation notice stated that an investigation at the fire scene would take place starting on July 10, 2007, and that others could participate in the ongoing investigation.

One of the subrogation notices was sent to Asoyia, a company that produced and sold soybean oil. Although Asoyia received the subrogation notice from United Fire, no one at Asoyia gave the subrogation notice to Michigan Millers. No one from, or on behalf of, Asoyia participated in the fire investigation. Sunnyside Country Club was entirely repaired in the summer of 2008.

On May 19, 2009, United Fire sued Asoyia in [Iowa] state court, alleging that the fire at the country club started due to spontaneous combustion of recently laundered kitchen rags, and that the rags had been used to clean a fryer that had contained Asoyia's soybean oil. United Fire alleged that Asoyia is liable to pay the damages caused by the fire because it did not warn customers about the hazard of spontaneous combustion after laundering oil-soaked rags.

Once it was sued in state court in 2009, Asoyia promptly sent notice of the suit to Michigan Millers. Vivan Jennings was Asoyia's Chief Executive Officer in 2005 and 2006. His duties included marketing the oil, and approving product warnings and labels. Jennings was added to the state court lawsuit in 2012. Jennings promptly sent notice to Michigan Millers when he was sued. Michigan Millers' insurance contract with Asoyia was in force at the time of the fire. Jennings is insured under Michigan Millers' insurance contract with Asoyia, and thus is bound by findings about Asoyia's coverage. Asoyia

-3-

went out of business in December of 2009. The Court has ruled that United Fire has standing to litigate Asoyia's insurance coverage.

Michigan Millers claims it was prejudiced by the delay (between June 2007 and May 2009) in receiving notice of the fire, and that because it did not receive notice of the possible claim when Asoyia first learned of the fire, the insurance contract does not provide coverage, and it does not have to defend or pay in the pending state court action United Fire has against Asoyia and Jennings.

United Fire claims that the investigations carried out in 2007 by the Waterloo Fire Marshal and United Fire's experts were thorough and based upon well-preserved evidence, and that Michigan Millers was not prejudiced by the delayed notice. At the end of the trial, you will decide whether, due to the delay in receiving notice of the fire, Michigan Millers was prejudiced in its ability to investigate and defend United Fire's state court claims against Asoyia and Jennings. If Michigan Millers was prejudiced, there is no insurance coverage for the claims made against Asoyia and Jennings.

## B.    Additional Facts

At trial, Michigan Millers—maintaining United Fire's investigation was biased—presented evidence indicating Michigan Millers could not perform a full investigation of the fire scene because Sunnyside was fully repaired before Michigan Millers received notice and the existing investigations failed to preserve adequately the evidence of causation.  Fire investigation experts for both sides testified it was important to investigate promptly to enable investigators to see the evidence in place, process it properly, secure contemporaneous witness statements, and confer with other investigators about possible causes.

After reviewing approximately one thousand pages of documents, Michigan Millers's fire investigation expert, Scott Dillon, testified the existing fire investigations were inadequate with respect to (1) the completion and documentation

-4-

of witness interviews;[3] (2) the examination and preservation of artifacts in general and the rag pile in particular; (3) the number, subject matter, and quality of photographs; and (4) the investigation of other potential causes of the fire, including what may have been an electrical fan near the suspected origin of the fire. In Dillon's view, those inadequacies made it impossible to determine the source of the fire because memories could fade and evidence was lost or had deteriorated over time. In addition to complaining the investigations were "so severely lacking in organization and accuracy" that they deprived Michigan Millers of the opportunity to "piece together" its own meaningful investigation, Michigan Millers claimed prejudice based on its inability to assess the damages and participate in settlement discussions before repairs were complete.

In response, United Fire presented evidence indicating Michigan Millers suffered no prejudice from the lack of notice because the investigations by Fire Marshal Boesen and United Fire more than adequately preserved the evidence to enable Michigan Millers to complete its own investigation, even two years after the fire. At trial, Fire Marshal Boesen described his process for photographing the fire scene and "systematically" processing the debris "to determine where [and how] the fire started." Having taken more than 120 photographs, Fire Marshal Boesen described for the jury the analytical importance of several key findings recorded in his photographs. Fire Marshal Boesen also testified that, as part of his investigation into the cause of the fire, he interviewed the firefighters on the scene and Sunnyside employees. When Michigan Millers challenged his investigative methods on cross-examination, Fire Marshal Boesen maintained he adequately investigated,

---

[3] As further evidence of prejudice, Michigan Millers noted United Fire redacted and withheld certain witness statements from Michigan Millers, claiming work-product privilege. United Fire countered that Michigan Millers did not seek judicial assistance in obtaining that evidence by the available means explained in the jury instructions.

photographed, and otherwise documented the fire, ruling out several alternative theories before reaching a conclusion as to causation.

United Fire's fire investigation expert, Lonn Abeltins, who arrived at the scene shortly after the fire, testified he too thoroughly examined all relevant potential causes of the fire. Abeltins, who took approximately 160 photographs, testified he and other investigators thoroughly documented and photographed the scene in compliance with industry standards. According to Abeltins and others, the photographs and witness interview notes they took and the artifacts and debris they collected, including the rag pile and key electrical system components, were all still available and would allow Michigan Millers to complete its own independent investigation.

United Fire also criticized Michigan Millers for failing to investigate even after getting notice. United Fire emphasized that Michigan Millers waited two-and-a-half years to hire Dillon and then asked for a very limited analysis, instructing Dillon to determine whether the Sunnyside fire "was documented such that another investigator could come to a meaningful and independent conclusion as to . . . the origin and cause of the fire without performing a fire scene investigation, without looking at artifacts collected at the scene, and without interviewing any witnesses." Repeatedly decrying what it saw as Michigan Millers's failure to make any effort to interview witnesses or review the stored evidence, United Fire questioned why Michigan Millers never interviewed Fire Marshal Boesen before trial despite his willingness to be interviewed, his objectivity, and his reportedly good recollection of his investigation.

After three days of testimony from seven witnesses and receipt of hundreds of photographs and other exhibits, the district court submitted the issue of prejudice to the jury with a special verdict form asking (1) if United Fire rebutted the presumption of prejudice and, (2) if so, did Michigan Millers prove actual prejudice. On

-6-

December 20, 2013, the jury answered both questions in United Fire's favor, and the district court entered judgment.

Michigan Millers timely moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and, alternatively, for a new trial under Federal Rule of Civil Procedure 59(a)(1)(A). This appeal followed the denial of that motion. The parties agree Iowa law governs this diversity action. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

## II.    DISCUSSION
### A.    Prejudice

Michigan Millers first argues the district court erred in denying its post-trial motion because, in its view, the trial evidence did not support the jury's verdict. "We review *de novo* the district court's denial of [Michigan Millers's] motion for judgment as a matter of law." Estate of Pepper v. Whitehead, 780 F.3d 856, 861 (8th Cir. 2015). Although Michigan Millers and United Fire both appear to apply the federal standard without discussion, see Fed. R. Civ. P. 50(a)(1) (permitting judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue"), we think the Iowa standard applies to this diversity case.

In reviewing evidentiary sufficiency in diversity cases, we have "generally applied the appropriate state sufficiency standard where the issue has not been raised by the parties and the state and federal standards are similar." Carper v. State Farm Mut. Ins. Co., 758 F.2d 337, 340 (8th Cir. 1985); see also Hanson v. Ford Motor Co., 278 F.2d 586, 589-90 (8th Cir. 1960) (Blackmun, J.) (considering the question open after Dick v. N.Y. Life Ins. Co., 359 U.S. 437, 444-45 (1959), and applying the state standard); cf. Mercer v. Theriot, 377 U.S. 152, 156 (1964) (per curiam) ("The evidence was sufficient under any standard which might be appropriate—state or

federal."); Keenan v. Computer Assocs. Int'l, Inc., 13 F.3d 1266, 1269 n.3 (8th Cir. 1994) (noting "some uncertainty about whether federal courts should apply state law standards or federal law standards to motions for a judgment notwithstanding the verdict in diversity cases" before deciding "[w]e need not be concerned with this dispute as the federal standard and the [applicable state] standard [we]re virtually identical"). But see Farner v. Paccar, Inc., 562 F.2d 518, 522 (8th Cir. 1977) (applying the federal standard).

We consistently have held the Iowa sufficiency standard is "substantially the same" as the federal standard. Ozark Air Lines, Inc. v. Larimer, 352 F.2d 9, 11 (8th Cir. 1965); see also, e.g., Chadima v. Nat'l Fid. Life Ins. Co., 55 F.3d 345, 347 n.5 (8th Cir. 1995); Carper, 758 F.2d at 340 (analyzing Osborn v. Massey-Ferguson, Inc., 290 N.W.2d 893, 901 (Iowa 1980)). Both standards demand substantial evidence to support the jury's verdict and require us to view the evidence in the light most favorable to United Fire, drawing all reasonable inferences to its benefit. See Ozark Air Lines, 352 F.2d at 11 (citing Ellingson v. Kramer, 125 N.W.2d 777, 780 (Iowa 1964)); Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc., 783 N.W.2d 684, 687 (Iowa 2010) ("Evidence is substantial if a reasonable mind would find it adequate to support a finding."). "[I]f reasonable minds could differ on an issue when the evidence is viewed in the light most favorable to the nonmoving party, then it was appropriate to submit the issue to the jury and the jury's verdict should be upheld." Lamb v. Manitowoc Co., 570 N.W.2d 65, 68 (Iowa 1997); accord Structural Polymer Grp. v. Zoltek Corp., 543 F.3d 987, 991 (8th Cir. 2008) (explaining we will not reverse a jury verdict "unless no reasonable juror could have reached the same conclusion").

"The standard for granting a motion for new trial is higher still." Howard v. Mo. Bone & Joint Ctr., Inc., 615 F.3d 991, 995 (8th Cir. 2010). We will only reverse the denial of a new trial motion for an abuse of discretion. See Lockley v. Deere & Co., 933 F.2d 1378, 1385 (8th Cir. 1991). "Where, as here, the 'basis of the motion

for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal.'" Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 311 (8th Cir. 1997) (quoting Keenan, 13 F.3d at 1269). "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." Keenan, 13 F.3d at 1269.

With these standards in mind, we conclude the district court properly denied Michigan Millers's post-trial motion. In a decision unchallenged on appeal, the district court decided as a matter of law that Asoyia did not substantially comply with the notice provision of the Michigan Millers policies. Under Iowa law, that failure gives rise to a presumption of prejudice to Michigan Millers. See Met-Coil Sys. Corp. v. Columbia Cas. Co., 524 N.W.2d 650, 654 (Iowa 1994). But the presumption is rebuttable upon a "satisfactory showing of lack of prejudice," in which case, Michigan Millers must prove actual prejudice to warrant denying coverage. Id.

To resolve those issues, the special verdict form asked the jury to answer two related questions: (1) "Did Defendant United Fire prove facts which show that Plaintiff Michigan Millers was not prejudiced by delayed notice of the fire?"; and (2) if so, "Did Plaintiff Michigan Millers prove that it was actually prejudiced by delayed notice of the fire?" The jury instructions did not specifically define prejudice but instructed the jury to consider, as to the first question, whether "the fire investigation by United Fire and the Waterloo Fire Department was sufficiently thorough and the evidence was sufficiently well-preserved to allow Michigan Millers to fully investigate the fire after it received notice in May 2009, and that Michigan Millers never attempted to investigate." As to the second question, the instructions queried whether Michigan Millers lost the opportunity to try "to settle the claim" or "to conduct, direct, or participate in a meaningful fire investigation." See, e.g., Fireman's Fund Ins. Co. v. ACC Chem. Co., 538 N.W.2d 259, 266 (Iowa 1995) (en banc) (discussing factors relevant to prejudice).

On this record, it was not unreasonable for the jury to determine Michigan Millers suffered no prejudice from Asoyia's delay in giving notice. Over the course of the four-day trial, United Fire presented detailed testimonial and documentary evidence that a reasonable jury could find sufficient to rebut the presumption of prejudice. With the aid of some of the hundreds of photographs they took, Fire Marshal Boesen, Abeltins, and other investigators thoroughly described their investigatory processes, explaining their methods and cataloguing the physical evidence they documented and preserved.

To further rebut the presumption, United Fire presented testimony allowing a reasonable jury to conclude that—despite some potential obstacles—the carefully preserved evidentiary record, including photographs, witness statements, and stored physical evidence, would enable Michigan Millers to conduct a thorough and meaningful investigation of the fire, even two years after receiving notice. Faulting what it saw as Michigan Millers's tactical refusal to investigate, United Fire maintained Michigan Millers merely complained of *potential* prejudice from a variety of sources, but failed to show any *actual* prejudice ever materialized. See Fireman's Fund, 538 N.W.2d at 266 ("'[M]ere speculation that prejudice to an insurer may exist as a result of its insured's failure to give notice . . . as soon as practicable . . . will not suffice to relieve the insurer of its liability wherein the lack of prejudice is clearly demonstrated.'" (quoting 8 John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4732, at 30 (1981))). Although Michigan Millers may have been correct in proclaiming in its closing argument that the question of prejudice was "a close call" for the jury in weighing the evidence, we conclude the evidence adduced at trial amply supported the jury's verdict.

**B.      Who Is an Insured**

Michigan Millers next challenges the district court's determination that Jennings was insured under Asoyia's policies.[4]  See Ill. Nat'l Ins. Co. v. Farm Bureau Mut. Ins. Co., 578 N.W.2d 670, 671 (Iowa 1998) ("The construction of an insurance contract and the interpretation of its language are matters of law for the court.").  "We review both the district court's grant of summary judgment and its interpretation of the insurance policy *de novo*."  United Fire & Cas. Co. v. Titan Contractors Serv., Inc., 751 F.3d 880, 883 (8th Cir. 2014).  Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In construing an insurance policy under Iowa law, the intent of the parties—as evidenced by the unambiguous policy language—controls.  See Nationwide Agri-Bus. Ins. Co. v. Goodwin, 782 N.W.2d 465, 470 (Iowa 2010).  "Ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one."  A.Y. McDonald Indus. v. Ins. Co. of N. Am., 475 N.W.2d 607, 618 (Iowa 1991) (en banc). "A mere disagreement . . . as to the meaning of policy language" does not create ambiguity.  Kibbee v. State Farm Fire & Cas. Co., 525 N.W.2d 866, 868 (Iowa 1994). A policy is ambiguous "[o]nly when the policy language is susceptible to two *reasonable* interpretations."  Id.  "If the policy is ambiguous, we adopt the construction most favorable to the insured."  Boelman v. Grinnell Mut. Reins. Co., 826 N.W.2d 494, 502 (Iowa 2013).  "It is therefore incumbent upon an insurer to define clearly and explicitly any limitations or exclusions to coverage expressed by broad promises."  Cairns v. Grinnell Mut. Reins. Co., 398 N.W.2d 821, 824 (Iowa 1987).

---

[4]Stating Asoyia's primary and umbrella policies contain "substantively identical provisions" as to who is an insured, Michigan Millers analyzes the policies together.  We do the same.

Applying these rules of interpretation, we conclude the district court did not err in deciding the Asoyia policies were ambiguous and Jennings was entitled to coverage. In addition to Asoyia—the named insured on both policies—the policies generally include as insureds Asoyia's (1) members with respect to Asoyia's business; (2) managers with respect to their managerial duties; and (3) "'employees' . . . for acts within the scope of their employment." The parties agree Jennings was once an Asoyia employee and his alleged liability derives from acts he took within the scope of his employment but disagree as to whether Jennings, who terminated his employment before the fire, qualifies as a named insured under the policies.

Based on its reading of the insuring agreement and policy definitions, Michigan Millers argues Jennings is not an insured because coverage is determined "[a]t the time of the . . . occurrence" and Jennings had "severed his relationship with Asoyia by the time of the fire." Opining that "limiting coverage to those persons who . . . qualify [as employees] during the coverage period is the only logical way to construe the policy language," Michigan Millers suggests "extending coverage to a former employee constitutes an improper re-writing of the policy."

In contrast, United Fire emphasizes that the Asoyia policies do not expressly "limit coverage to employees of the named insured 'at the time of the occurrence,' nor do [they] . . . otherwise distinguish as to whether current or former employees qualify as insured." According to United Fire, "[t]he only limitation as to employees is that they are only insured for 'acts with[in] the scope of their employment.'" Jennings adds that "[t]he policy language places temporal limits only on the timing of the damage." As Jennings sees it, "the only reasonable interpretation" of the policy language is that the timing of the loss "does not limit the definition of who is an insured."

Confronted with these conflicting "*reasonable* interpretations" of the policy language, Kibbee, 525 N.W.2d at 868, the district court determined the policies—

-12-

which lack any explicit temporal limitation on which members, managers, and employees are covered—were "ambiguous as to whether the term 'employees' [was] limited to Asoyia's employees on June 18, 2007, the date of the occurrence." Resolving the ambiguity in Jennings's favor, the district court concluded Jennings was insured under the policies. We find no fault in the district court's application of Iowa law. See Boelman, 826 N.W.2d at 502.

## III.  CONCLUSION
We affirm.

_____